The next case on the docket this morning is Busch v. Country Financial Insurance Company. Mr. Carlson and Mr. Dar. Good morning. When you're ready, you may begin. Mr. Carlson for Country Financial Insurance Company, or more appropriately, Country Mutual Insurance Company, which is the entity that issued the two policies about this stacking contract interpretation case. And it is a straight contract interpretation that has been, interestingly, visited by the Supreme Court on many occasions, including the Brezhnev v. Illinois Farmers. This was one of the first cases to explicitly know the legislature and the courts have found anti-stacking clauses enforceable, specifically not against public policy. In fact, they're authorized in the legislature, and they've been enforced by the Illinois Supreme Court on numerous occasions that we cite in the brief, from the Hobbs and Menke and Bruder cases. The Brezhnev case, the case actually I, our end many years ago in the Supreme Court. And, but here we have a trial court that just refused to apply any of the Supreme Court law and chose to ignore it, finding that a different public policy applied under his interpretation of the contract and the law. Mr. Carlson, tell me how the Bruder case, in the Bruder case, the language of the policy, the anti-stacking policy, was almost identical to the country mutual policy here. It seemed that the only thing you did in the anti-stacking policy in this case, as opposed to Bruder, was you added or a relative by one of four companies. So now you've extended the scope of coverage past just the people who are in the definition of you to a relative. And in Bruder, it was all about the you, right? The you, right. They had a corporation and a husband and wife, and they had different, the identification of the baby was slightly different, and they had an unborn daughter who was born subsequent to the accident. And that daughter actually allowed, was allowed stacking? Because she wasn't insured or qualified, because she didn't, she did not, was not allowed. So how is this girl qualified, insured, under the second policy? She obviously was under the first policy, but explain to me how she was under the second policy. Well, that's why, because it's the same definition. In the policy issued to George W. Bush solely, the reason Amber qualified as insured or uninsured motorist coverage, and the definition of who is insured, it's you or a relative. The name insured, the you, is you or a spouse residing in the same household. That's George W. Bush and his spouse. Amber is not his spouse. She's not insured at that point under the policy. She's not named insured. She's not spousally named insured. But the policy then has a definition, the same that's applied throughout the whole policy, a relative is someone related to you by blood living in the same household. She's the daughter of George W. Bush living in the same household. So under the definition, who is insured, uninsured motorist coverage, she qualified as an insured for that coverage. Under a motorist policy, even though she didn't pay that premium and had higher limits, if she had not been living in the household, if she was 23, if she was living somewhere else, she would not have qualified as an insured in that policy. So she got coverage under not only her own policy, potentially, but potentially her mother's policy. She could have, you know, if she had been in the vehicle, she could have been in someone else's vehicle. She could have had coverage under the vehicle she was an occupant in as well. But, you know, these policies, they don't like, you know, coverage for the owners, occupants, permissive users, many situations. So here, the same definition that qualifies her as an insured also applies to the condition A of the general conditions applies to all the policy provisions and is specifically incorporated in the uninsured motorist coverage with reference to all the general conditions, which have duties like giving notice of the accident, and many other provisions that apply to all the coverages. And here it explicitly says it fits exactly if any other policy issue or relative, and they do. They're both policies for you or a relative. You get the highest limits. If Amber had purchased a policy limit for $100,000, she was protected up to $100,000 if she had an accident with an uninsured motorist. So here, though, by the circumstance of the definition of relative, she gets greater coverage under her mother's policy that she qualifies for. She wasn't in her mother's vehicle, or her mother wasn't involved in the accident, but she was in her mother's household, so by relative she qualifies, but it limits it, which is enforceable, the staffing clause, to the highest limit, not the lowest limit. The highest limit is $250,000. She couldn't stack the $100,000 on top of the $250,000 under the policy language. Just like here, if the tortfeasor in the case had limits of $250,000, there wouldn't be any uninsured motorist claim in either policy because they would be equal to or exceed the uninsured motorist coverage purchased by the insurer. The purpose of uninsured motorist coverage, as found by the Supreme Court repeatedly, is to put yourself in the same position as if you had that insurance that you purchased for yourself. So here, Amber purchased $100,000. Her mother purchased $250,000. The tortfeasor had $100,000, and Amber wasn't living in her mother's household. She could only get $100,000 from the tortfeasor and zero under uninsured motorist policy. That's a well-explained in the cases I cite in the deal and the Supreme Court cases. You don't get put in a better position by stacking. I mean, it's just a law. The argument only is there's another policy out there that the premium is somehow paid and there should be a block. And that's basically what the court did in this case in spite of the fact that premiums are based on the entire provision of the policy, done right in the entire provision, every provision being construed in its entirety and looking at the policy and interpreting its intent and effect. The court seemed to be concerned about the Paragraph 8, the other insurance, and used that to find an ambiguity, didn't it? It found an ambiguity because it said it conflicted with Paragraph 4 of the uninsured motorist coverage because it said that was the paragraph in the uninsured motorist coverage, but in the deal explained why that wouldn't be relevant to this factory situation. That would only apply to a situation where there was two different insurance companies. You know, you had somebody insuring the driver, somebody insuring the loaner, for example. And because if it's the same company, your proportionate share, if there's two policies, $100,000 each, and you take the total and then your proportionate share, it would always be $200,000. It would be an apology. It would mean nothing. So the trial court opinion rendered that clause absolutely meaningless and said, well, why don't we still rely on this meaningless clause and ignore Condition 8 in the general conditions because it's not in Section 2, the uninsured motorist coverage, even though it's specifically at the very beginning of the coverage, it references that we adopt all the provisions in the general policy conditions. You would have a very long policy if you had to repeat all of those conditions in each section of the policy, as to giving notice of the policies, two or more vehicles, subrogation rights, et cetera, just like the definitions are separate from Section 2. It's a separate part of the policy, but the definitions apply to all the provisions of the policy. The word relative, again, is in the definitions. It applies in the Section 8. It applies in the coverage, giving Amber $250,000 notice of policy. Even with something like Bruder, if it didn't have the word relative, she wouldn't get that $250,000. It would just be Mrs. Bruder and her spouse. So she'd only get $100,000 next time. Here, by having the word relative, she's gotten a greater benefit from the policy, but she didn't pay any payment for it at all. But it's not – but it's only to ensure you get at least the amount of person purchased. That's the purpose of public policy in uninsured motorist and uninsured motorist coverage. And here, she purchased $100,000, got $250,000, and the law is absolutely clear. The language is not ambiguous that it should be enforced as written, and it's held on Supreme Court from Reschak v. through Menke, through Hobbs, to Bruder, and we respectfully request that the – for the first Madison County trial court, and for the reasons reported in our argument. Thank you. Any questions? No questions. You asked a question I was going to ask about the other insurance clause. None? None. Okay. Thank you so much. We'll have a few moments for rebuttal. Mr. Darn? Good morning. Good morning. Ronnie Darn here for Georgie Bush. May it please the court and counsel, this is not a stacking case. This – we're not attempting to stack coverage under a single policy. In this particular case, as the court is well aware, there are two separate policies. They're issued to two separate insurers charging two different rates of premium. And basically, in this case, what we're asking, what the trial court found was that when an insurance company sells two policies and collects premiums for two separate policies, it can't insert a clause in there that says, but will only be liable for one of them. That's – they're selling something for nothing, or their obligation is something on this. One of the issues that I wanted to address was the issue of why – as I understand, counsel, what he's arguing was that she was a resident under Georgie Bush's policy, so therefore she must be a resident under Amber's own policy. She would have been entitled to $250,000 had she not been a resident. And that same definition that made her an insurer under the Georgie Bush policy has to follow through and make her an insurer under her own policy. And that's not the case, and that wasn't the court's finding. The court never relied on the issue of resident to do that. This case originated because they proceeded to contender the $250,000. That's what we thought that the value would always be, would be over the $250,000 and not the $100,000. It turns out they flipped us on our side and wanted to pipe up $100,000. The reason that – we believe that the reason that they paid down the $250,000 was because Georgie had a claim. I mean, that's – Georgie is the insurer. Georgie had a loss that would be covered under her policy, which is the death of her daughter. Was there a pleading file on that? No. Was there an estate file? No. Nothing's been filed? I'm not sure I understand the question. Was an estate filed on behalf of Amber? It looks like there was a special administrator. There was a special administrator. Only for the wrongful death. So was a lawsuit filed or just a special administratorship? Just a special administrator to bring this particular action. As you recall from the stipulation that was before the trial court, they stipulated that the damages exceeded $350,000, and they stipulated the issue as the damages. So there was no issue as to liability, and there was no issue as to whether the damages sustained by the estate exceeded the total amount of all combined coverages. So this was a claim by the dependents of the child or the Amber? Yeah. So this wasn't Amber's claim for her personal injury or suffering? Because that would have had to have been brought under the survival statute. There was never a wrongful death, survival action, multiple count complaint filed. But the special administratorship would only go to the wrongful death statute. Special administrator. It's only allowed under wrongful death, right? That's what the statute says. But as a practical matter, most people bring a wrongful death and a survival action. That bothers me. But what I'm trying to get to is the damage issue that you're talking about. So you're claiming that the damages here were damages that belonged to Georgie. Georgie, yes. Georgie did have her own damages, which are the loss of society and the grief that's permitted under the wrongful death statute. Amber obviously had a, well, there wasn't a broad economic component to Amber's claim. I mean, she was a young kid. So, yeah, Georgie has her own claim for loss of society, loss of companionship and grief. But they stipulated that it was worth more than $350,000. No question about that. And any claims against these policies exceed $350,000 and that Georgie Bush is the appropriate person to bring that claim. That was stipulated too in the stipulation. So then it really boils down to can they sell two separate policies with two separate premiums when you have damages that exceed the combined limits of those policies? And say we're only going to pay out under one even though we know we've collected under two policies and collected premiums under two policies? Well, isn't the law on that pretty clear that you can collect on multiple policies and enforce an anti-stacking clause? Because Mr. Carlson indicated there seems to be quite a bit of law on that. Well, there is law that says you can enforce anti-stacking clauses for sure. Based on double premiums. I don't think under these circumstances. Do you think that the premium issue is the issue here? Yeah, I think that there's an issue here of, yes, they paid two premiums. They had two separate policies as opposed to multiple policies under one declaration sheet combined. Matt, you raise an interesting point. There's no declaration sheet in the appendix. Is that in the record? There is. And I believe it is in the appendix to our brief. Okay. I missed that. Counsel's brief. So how is the appendix page relevant? Or the declaration page? Because a lot of the case law talks about the declaration page and how it's set out. Where there's ambiguity. Well, I think the relevance of the declaration sheets on these is they don't contain any type of limitation of coverage. They charge them a premium. They charge them a premium set out for uninsured motorist coverage. And then they pay issued separate coverages for separate vehicles. I mean, these were two stand-alone policies. Georgie Wood and Amber Wood could have lived anywhere. She bought this policy. They had moved residences. She had been around, had boyfriends. She just so happens at this time to be cohabitating with her mother in the same house when this death occurred, in the same apartment. And they moved to Missouri. But you'll notice in the declaration sheet the policy was issued when they resided in Granite City. So Amber is not – I see Amber is not on the Georgie Bush policy or 250. She's not. But she is on the policy for the 100-300 limit. Right. And what was stipulated in the facts was that the larger policy, the 250 policy, was for Georgie Bush. Georgie Bush had a 2003 Infiniti, which she drove. Amber had a Ford Focus, which is a separate vehicle listed on the declaration sheet. If Amber had not moved back into her mom's house. It's fortuitous that she lived there. She moved back in. Yeah, I was living there. You know, and I'm not – she was a 23-year-old girl. She was bouncing around sometimes in college, sometimes not. I had a boyfriend, sometimes not. Mom was a safe residence to go back to. But if she had stayed out of the house, we wouldn't be having this argument today. What they're trying to say is – Do you think they would have paid the 250, though? If she had not been in the house, would she have only been entitled to the 100? I think they would have had to because I believe that it was an occurrence under the Georgie Bush policy for her or her families, which was the loss of her daughter, grief, all that. Counsel, how would you distinguish this case from Bruner, Hobbs, and the American family cases cited by the appellant? Well, I think what makes this case different than all the cases is the Bruner case tries to expand it back to being residence. And here we're talking about it in the context of a mother-daughter. But if you look at this policy, it applies to, you know, if your nephew moves in with you, if your niece moves in with you, and they just by habit have to have state farm or country mutual and you guys have the same insurance policy and you guys move into the same house temporarily or permanently, this is excluded. And it essentially gives them a windfall under these circumstances because they've been collecting premiums, possibly premiums for years. And by the habit of when death occurs or when injury occurs, they get out of the policy because someone is moving into the same household with each other. The other issue between these is the conflict. What about the policy language is what I'm asking you about in terms of those three cases? Well, I – is there a difference? I'm not as conversant on the exact policy language of the American family cases as the Bruner case. The Bruner case was the one who relied on just the definition. In this case, what I think in the context of all of these cases, they have a section in the uninsured motorist provision that says when there's more than one policy implicator, such as this case or such as in all the cases, we will pay out either our pro rata share or we will be excess to the other policies. And in no context to be limited to whether or not those other policies or policies sold by us being the country mutual or state farm, they just clearly say in broad terms under what circumstances they will be excess and which terms they'll be pro rata. The Trout Court found specifically in this case it didn't matter whether pro rata applied or whether excess applied in this case because we all agree the damages exceeded the total amount available in coverage of $350,000. Trout Court also found that had country mutual or any of these other companies wanted to limit their exposure, they would have had to create a separate rule, something in addition to pro rata, something in addition to excess that says, well, if there's more than one policy applicable to this death claim, and it's a policy sold by our company, then there will be yet a third rule applied. And they didn't do it in this case. And I think that's what distinguishes it from some of the other cases where they had their limitations all within the amateur policy. In this case, there's a limitation found outside it at the end of the policy paragraph 8 that attempts to change everything that they said in policy 4. I don't think there's any way you can look at those two paragraphs and not conclude that they conflict. There's just no way around it. I don't think anybody tried to argue that they don't conflict. For some reason, they want paragraph 8 to be supreme over paragraph 4. And there's no explanation as to why paragraph 8, which is outside the uninsured motives provisions of the policy, should reign superior over paragraph 4, which is the heart of uninsured coverage, that says here's what we're going to do now based on policy at play. At a very minimum, it's a conflict. It's an ambiguity. When posed with that, obviously the rule is when posed with that, it doesn't matter which one you resolve in your head is more fair or not. When there's a conflict, you apply the rule that's more favorable to the insured, and that's what the trial court did in this case, and I think that was the right call in this case. And they need to be affirmed. I'm almost done here, but I've got a little more time. I was just seeing the Bruder case. There was some conversation made that the child was in vitro or yet unborn at the time that the injury occurred. Obviously, the child was subsequently born and had complications, and that claim was filed. And I think that's kind of a distinction that warrants a different result in this case. I mean, I think when you look at Bruder, they said, no, when we're looking at a paternal view, we're not going to exclude the daughter. In this case, Amber Wood was the daughter. They paid out. We believe they paid out because of Georgie Bush's own claim and their own policy, and simply because they, by happenstance, happened to be occupying the same household, does not include her getting the benefit of the policy she purchased and paid considerable premiums for over a number of years. So we would just ask that you affirm the trial court. Thank you. Thank you. Mr. Carlson? Referencing my Bruder case, for example, as mentioned again here, the Bruder case, as I said, the same condition eight was in the general policy conditions, which they found unambiguous. These all-year provisions, they were in the general policy conditions, the anti-stacking clauses. The Supreme Court found unambiguous. They didn't find a difference that it didn't have it in the same column of uninsured mothers where it had a reference. We incorporate the general policy conditions in section two. They incorporate the general policy conditions in section one, the liability coverage, the medical payments coverage, the property damage coverage. There's many coverages here. This idea that Georgie Bush had a separate uninsured mother's claim is simply not really true. The uninsured mother's coverage requires bodily injury to someone sustained in an accident. Amber Bush had the injury. The limits of liability, you have to – she was not involved in any uninsured mother's accident, Georgie Bush. The limits of liability use, of course, are arguments never previously made before, and I think they're weighing, but in any event, if you look at the limits of liability coverage under the uninsured mother's coverage, it talks about the limits of liability for each person. Again, it was $250 per person, $500 per occurrence. If there were more than two people, there would be $500,000 coverage, not just $250. But here there was only one person, Amber, and a pedestrian, no other person hit, bodily injured in the accident. Mr. Carlson, when Amber paid for an insurance policy that has her name on it on the declarations page, you would agree that she had an anticipation of coverage. I mean, when you buy an insurance policy, you think of coverage. Correct. As addressed in the Greshak and the many cases, your intention is that reflected in the policy terms you get. Her intention was, as the McGill Court says, get $100,000 of uninsured mother's coverage if it happened here. Right. And her name is on the debt page, and so whether she paid a premium or her mother paid the premium, the declaration page shows both of them, and there's an anticipation of a $100,000, $300,000 uninsured motorist coverage, correct? Right. So if you buy a policy and you know that you've got this coverage, and then your parents or somebody else buys a policy for $250,000, $500,000, on which you're not named, you really have no idea whether you're covered or not, and you just happen to be, let's say you just move your stuff into the house, you're saying that that's enough to pay on that policy, but you have no right to collect on the policy that you actually purchased and that you had an intention to receive coverage on. Right. That's right. And just the fortuitous movement of your stuff into a house negates what you bought. What you bought, though, was to guarantee yourself up to $100,000 insurance. I'm sure the tort fees are not having insurance, but you're not compensating up to $100,000. It's to fill the gap. It's like uninsured motorist coverage. It's not that she – so she got – she was wanting to guarantee herself getting $100,000. But here, what she got was $250,000. $100,000. From the accident. From this policy. No, from the accident. That's what uninsured motorists – then there would be no – there would always be stacking of every policy, Your Honor, if that was the intention. Because every one – every one of these separate premiums and separate policies, there would be stacking of every coverage. Everyone would say every policy I got should apply. If you were – you mentioned the household. If you were traveling in someone else's car, you were just occupying and you were injured by an uninsured motorist, but the driver had a million-dollar uninsured motorist coverage, you'd get a million dollars under that policy because you have to – by E.R. law, you have to be considered an insurer where you're an occupant. So you'd get a million. Isn't – isn't that why Bruder allowed stacking in the case? I mean, Bruder is not a total anti-stacking case. There was stacking allowed for the person who had – Because she didn't fall within the terms of the anti-stacking clause, Your Honor, but the – this policy did. She had no interest in the policy. She was allowed – It didn't do because of that because she didn't fall within the terms of the policy. Just like the mother, again, couldn't make an uninsured motorist. She wasn't involved in the accident itself. If George – if the daughter had been living somewhere else, she would have – there would only have been $100,000 to pay total on the claim to whoever. Again, there is no lawsuit set up. There's no separate lawsuit consortium or any other claims. There's only one injury to one person, and the country has paid. They agreed to pay $250,000, and the first time I heard someone say, darn it, why did they pay $250,000 instead of $100,000? I thought that was kind of interesting. But the law – I mean, the premium arguments have been addressed in all the anti-stacking cases. This is what I argued in the Supreme Court back in 1995, and they found that they addressed all those issues because you're – because in many circumstances, a policy footer might not apply under, but you're guaranteeing an uninsured motorist. If the person only had $50,000 on coverage, she had uninsured motorist coverage of $100,000. She paid to get up to $100,000, but here she got more. All right. Unfortunately, I have to cut you off, but I think we get the point. Thank you very much. Thank you so much for your argument and your argument, Mr. Darn. This matter will be taken under advisement, and this position will be issued in due course.